**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
_Atlanta_ **DIVISION**



_Linda B. Philpot_
(Print your full name)

Plaintiff *pro se*,

v.

_Peach State Health_
_Plan_

(Print full name of each defendant; an
employer is usually the defendant)

Defendant(s).

CIVIL ACTION FILE NO.

**1:20-CV-1760**

(to be assigned by Clerk)

## *PRO SE* EMPLOYMENT DISCRIMINATION COMPLAINT FORM

### Claims and Jurisdiction

1.  This employment discrimination lawsuit is brought under (check only those
    that apply):

     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et
    seq., for employment discrimination on the basis of race, color,
    religion, sex, or national origin, or retaliation for exercising rights
    under this statute.

    > **NOTE**: To sue under Title VII, you generally must have
    > received a notice of right-to-sue letter from the Equal
    > Employment Opportunity Commission ("EEOC").

Page 1 of 9

_✓_ Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq., for employment discrimination against persons age 40 and over, or retaliation for exercising rights under this statute.

> **NOTE**: To sue under the Age Discrimination in Employment Act, you generally must first file a charge of discrimination with the EEOC.

_____ Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., for employment discrimination on the basis of disability, or retaliation for exercising rights under this statute.

> **NOTE**: To sue under the Americans With Disabilities Act, you generally must have received a notice of right-to-sue letter from the EEOC.

_✓_ Other (describe) Retaliation: Michael Strobel wrongfully eliminated my position after ① I filed a formal (corporate) complaint (about harassment & hostile work environment related to violation of policy) ② followed by my submission of formal complaint to EEOC.

2. This Court has subject matter jurisdiction over this case under the above-listed statutes and under 28 U.S.C. §§ 1331 and 1343.

## **Parties**

3.  Plaintiff.   Print your full name and mailing address below:

Name   _Linda B. Philpot_

Address   _339 Timeless WALK_

   _Stockbridge, GA 30281_

4.  Defendant(s).   Print below the name and address of each defendant listed on page 1 of this form:

Name   _Peach State Health PlAN (PSHP)_

Address   _770 Forsyth Blvd_

   _SAint Louis, Mo. 63105_

Name   _PSHP - Centene MANAgement Co. LLC_

Address   _____

   _____

Name   _____

Address   _____

   _____

## **Location and Time**

5.  If the alleged discriminatory conduct occurred at a location _different_ from the address provided for defendant(s), state where that discrimination occurred:

   _1100 Circle 75 ParkwAy, Suite 1100_
   _AtlantA, GA 30339_

6.   When did the alleged discrimination occur?  (State date or time period)

MAY 21, 2018

## **Administrative Procedures**

7.   Did you file a charge of discrimination against defendant(s) with the EEOC or any other federal agency?      ✓ Yes          _____ No

       If you checked "Yes," attach a copy of the charge to this complaint.

8.   Have you received a Notice of Right-to-Sue letter from the EEOC?

       ✓ Yes          _____ No

       If you checked "Yes," attach a copy of that letter to this complaint and state the date on which you received that letter: 2/6/2020

9.   If you are suing for **age discrimination**, check one of the following:

       ✓          60 days or more have elapsed since I filed my charge of age discrimination with the EEOC

       _____   Less than 60 days have passed since I filed my charge of age discrimination with the EEOC

Page 4 of  9

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2018-05459 |
| | | and EEOC |

State or local Agency, if any

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mrs. Linda B. Philpot** | **(770) 851-3029** | **1949** |

| Street Address | City, State and ZIP Code |
|---|---|
| **339 Timeless Walk, Stockbridge, GA 30281** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PEACH STATE HEALTH PLAN** | **15 - 100** | **(678) 556-2300** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1100 Circle 75, Atlanta, GA 30339** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-28-2018**   Latest **04-25-2018**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I. I began my employment with the above-named employer in 2006 and currently hold a Manager, QRS & STARS position. On August 1, 2017, Michael Strobel became my supervisor. I expressed my interest for a promotion to Mr. Strobel on several occasions. On February 22, 2018 and March 2, 2018, I complained to Human Resources about the harassment and retaliation from Mr. Strobel. On February 23 and 28, 2018, I applied for two Director positions. On March 2, 2018, I received a verbal warning to hinder me for applying for promotions. On March 15, 2018 and April 4, 2018, I learned that I was denied the promotion for the Director positions. On April 25, 2018, I was informed about an increase in my workload. II. I believe that I have been discriminated against because of my age (69) and in retaliation for opposing an unlawful employment practice, in violation of the Age Discrimination in Employment Act of 1967, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **May 09, 2018** _____ *Linda B. Philpot*<br>Date                Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2018-05459 |

|  | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mrs. Linda B. Philpot** | **(770) 851-3029** | **1949** |

| Street Address | City, State and ZIP Code |
|---|---|
| **339 Timeless Walk, Stockbridge, GA 30281** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PEACH STATE HEALTH PLAN** | **500 or More** | **(678) 556-2300** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1100 Circle 75, Atlanta, GA 30339** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-28-2018**   Latest **05-21-2018**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I began my employment with the above-named employer in 2006 and currently hold a Manager, QRS & STARS position. On August 1, 2017, Michael Strobel became my supervisor. I expressed my interest for a promotion to Director's role to Mr. Strobel on several occasions I expressed my interest for a promotion to a Director role to Mr. Strobel. On February 22, 2018 and March 2, 2018, I complained to Human Resources about harassment and retaliation from Mr. Strobel. On February 23 and 28, 2018, I applied for two Director positions. On March 2, 2018, I received a verbal warning to hinder me for applying for promotions. On March 15, 2018 and April 4, 2018, I learned that I was denied the promotion for Director positions. On April 25, 2018, I was informed about an increase in my workload. On May 21, 2018, I was informed about the elimination of my position. II. I believe that I have been discriminated against because of my age (69) and in retaliation for opposing an unlawful employment practice, in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **May 22, 2018**     *Linda Philpot*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Linda B. Philpot**
**339 Timeless Walk**
**Stockbridge, GA 30281**

From: **Atlanta District Office**
**100 Alabama Street, S.W.**
**Suite 4R30**
**Atlanta, GA 30303**

|  | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **410-2018-05459** | **Laurence Knight,** **Investigator** | **(404) 562-6845** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Darrell E. Graham,**
**District Director**

FEB 0 6 2020

*(Date Mailed)*

Enclosures(s)

cc: **Andrea Pendergraft**
**HR Compliance & Audit Partner**
**PEACH STATE HEALTH PLAN**
**770 Forsyth Blvd**
**Saint Louis, MO 63105**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

### ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

10.    If you were employed by an agency of the State of Georgia or unsuccessfully sought employment with a State agency, did you file a complaint against defendant(s) with the Georgia Commission on Equal Opportunity?

_____ Yes          _____ No          _____ Not applicable, because I was not an employee of, or applicant with, a State agency.

If you checked "Yes," attach a copy of the complaint you filed with the Georgia Commission on Equal Opportunity and describe below what happened with it (i.e., the complaint was dismissed, there was a hearing before a special master, or there was an appeal to Superior Court):

_____

_____

_____

_____

11.    If you were employed by a Federal agency or unsuccessfully sought employment with a Federal agency, did you complete the administrative process established by that agency for persons alleging denial of equal employment opportunity?

_____ Yes          _____ No          _____ Not applicable, because I was not an employee of, or applicant with, a Federal agency.

If you checked "Yes," describe below what happened in that administrative process:

_____

_____

_____

_____

## **Nature of the Case**

12.    The conduct complained about in this lawsuit involves (check only those that apply):

                    failure to hire me
___✓___     failure to promote me
                    demotion
                    reduction in my wages
___✓___     working under terms and conditions of employment that differed from similarly situated employees
___✓___     harassment
___✓___     retaliation
___✓___     termination of my employment
                    failure to accommodate my disability
                    other (please specify) _____

_____

13.    I believe that I was discriminated against because of (check only those that apply):

                    my race or color, which is _____
                    my religion, which is _____
                    my sex (gender), which is _____ male _____ female
                    my national origin, which is _____
___✓___     my age  (my date of birth is _____ )
                    my disability or perceived disability, which is:

_____

___✓___     my opposition to a practice of my employer that I believe violated the federal anti-discrimination laws or my participation in an EEOC investigation

___✓___     other (please specify) _Retaliation following complaint to corporate and EEOC about the hostile work environment_

14. Write below, as clearly as possible, the essential facts of your claim(s). Describe specifically the conduct that you believe was discriminatory or retaliatory and how each defendant was involved. Include any facts which show that the actions you are complaining about were discriminatory or retaliatory. Take time to organize your statements; you may use numbered paragraphs if you find that helpful. Do not make legal arguments or cite cases or statutes.

Michael Strobel used his authority to punish me for complaining to HR & corporate about promotional inconsistencies. Initially, M. Strobel retaliated by: excluding me from meetings & conferences needed for my role, verbally abusing me by shouting in hallway, avoidance of required 1 on 1 communications, false accusations, refusal to discuss open positions, refusal to promote as promised by several upper managers. See Attached: formal complaint, also showing unrequested Transfer. Also, I was asked: "Why are you still here" "Why are you staying in this environment, when you can be retired at home?" (by HR & several administrative workers). As retaliation increased, I filed a formal complaint & charge with EEOC. Michael Strobel, then, proceeded to eliminate my position (without notice after 12 years of employment). See attached overview to respondent's statements when requested.

(Attach no more than five additional sheets if necessary; type or write legibly only on one side of a page.)

**Formal Complaint**: Hostile Work Environment and Retaliation by Michael D. Strobel

Date: 3/2/2018

Delivered via confidential e-mail

To:      Jalie G. Edwards Cohen

I would like to let you know that I am formally submitting a complaint that I am being <u>retaliated against</u> by Michael Strobel, and I am submitting this letter to serve as my initial documentation of emerging hostile work environment concurrent with comments in Workday.

<u>Emerging Hostile Work Environment</u>

On Friday 2/23/2018 I approached Michael S. to clarify and correct an assumption and accusations he made in an e-mail. (Will provide upon request). He would not give me the opportunity. I knocked on a closed door and as soon as I walked in (and in the presence of another) I was  immediately <u>subjected to offensive, unwelcomed conduct that was so intense</u> that it affected my level of thinking, comfort and peace in my work for the rest of the day and during the entire weekend. He displayed severe & intense hostile facial expressions

The day before – on 2/22/18, I expressed my concerns of fear (about MS's emerging anger) to Deidra Johnson, HR Director

On Monday 2/26/2018, I was very concerned about the confusion and emerging hostility; however, I was and I am now fearful of being alone with him.  With his face turning red and getting yelled at about my tone of voice on Friday while pointing at me was frightening and made me suspicious of a setup.

He has avoided me since my transfer to his department on 8/1/2017 – 6 months.

**During the entire 6 months, he has not scheduled one 1:1 with me**

Below is a description of the relationship I have had with MS over the past 6 months:

I was <u>transferred to QI for business reasons on 8/1/2017 </u>and I was given the impression that advancement opportunity was better in the QI department for me. (Going on 12 years of employment, I have been patiently awaiting a director level opportunity for years)

On 8/31/2017, the day after one of the directors suddenly quit the job, I <u>offered my services </u>to take her place as this was a real business need. I viewed this as <u>a win-win because</u> restructuring of a disordered QI department was occurring with Leslie since June, and I was more than willing and qualified to do the work. and since I am the only certified professional in healthcare quality (CPHQ) here @ PSHP – <u>a requirement to work in QI</u> - with many years of experience, I was also more qualified than the vacating director or any other in the department. He said that he could not do that. At that time, I cited 4-5 immediate appointments to director positions @ Peach State that have taken place and appeared to be due to business needs. This one would be no different. I would not approach MS anymore until the next year.

1

Tension began to mount up after 2/19/2018:

On Monday (2/19) as structuring QI was occurring, M.S. stated that he did not yet know what he wanted to do with the existing current open director quality position (not yet posted). It had been sitting un-occupied since August. When I mentioned that I am still waiting to be moved to director level and that I could easily be moved into this existing quality position, M.S. again communicated that he did not know yet what he wanted to do with that position; but, he expressed that he had proposed a position for me and that it was at corporate awaiting approval. When I asked - what was the name of the position (only in an attempt to do proactive planning) M.S. stated that he did not want to tell me that information. He also seemed very angry when I asked about the pending positions.

On Tuesday (2/20) I was met with confusion and frustration due <u>to apparent lack of transparency and non-use of multiplier disciplines,</u> because coupled with the above statements, this said director quality position (**that he & I had just talked about**) was posted on our job site. A co-worker informed me about the job postings at the end. I would not have known about the postings, otherwise (because the day before, MS stated that he had not yet decided what he was going to do about the positions we discussed (director level)

On Wednesday, (2/21) I made a 2nd attempt/request to go to the Risk/Quality Summit in Nashville because this would support the Q/RA position that I am hoping to get. I was shocked to be at the end of angry and yelling rage from M.S. because of my request.

On Thursday (2/22) I requested to meet with him to discuss the stress related to the apparent lack of support and transparency for the positions (why did he hide the positions from me?). The subject line of the meeting was "Stress Reduction and OFI" (opportunity for improvement = ofi). I did not receive a response until I saw him in the hallway; I walked with him, and as I spoke with <u>him he never looked up at me and never made eye contact.</u>

On Friday (2/23) I applied for the 1st posted position. I arrived at 6:30 am in an attempt to share supportive information that I had applied for the director position posted. I asked to see him and he delayed seeing me. When I returned from lunch, I noticed <u>an e-mail with false accusations about my request to go to RISE Quality Risk Adjustment Summit in Nashville.</u> (Will provide e-mail upon request). The following week I applied for the 2nd director position.

<u>*This is what led to the unwarranted verbal warning on 2/28/2018</u>

I believe this verbal warning is being used by M. S. to retaliate against me and block my advancement/promotion to the posted director positions. <u>Please see response in Workday.</u>

I am requesting your help to remove the verbal warning and to mentor or counsel MS. I believe he has displayed hostile retaliatory behavior, as if he has permission to yell and miss-use his authority. This will help me and future employees like me and this will support a non-hostile work place.

*The reason that I am involving corporate is because there are 2 positions currently posted that I am fully qualified to fill; but, the verbal warning conveniently written by MS, is now a barrier.

2

An existing company policy states that one cannot advance in the company if a disciplinary event is in place (such as a verbal warning). I believe M.S. is using the verbal warning to block my advancement while making it possible for others who do not meet any of the qualifications to apply, leveraging their chances without my entry. Also, there is lack of trust at the health plan because due to the fact that I had given local HR 'heads up' this ended in an unwarranted verbal warning 5 days later, just in time to block movement up in the application process.

* I did not show hostile behavior at no time. I was accused falsely on Friday 2/23 and I tried to give an explanation; and even though I presented another person to verify my statements, M.S. rejected my claim. MS appeared red in the face and angry that I had applied for the positions despite the attempts to hide the postings from me (or make me believe that he had not yet decided about the positions). I believe this (that I applied) is what ignited him to write a verbal warning on 2/28/18

I do not accept this verbal warning.

*Please respond and help me by stopping this retaliation & hostility by:

- 1st ask MS to remove this verbal warning and work with me to resolve the confusion
- Appropriately placing me in director role or above in QI or another department to match my current talent and skill
- Transfer me back to Dietrick Williams

*

Thank you for your help, in advance,

Linda B. Philpot

3

**July 31, 2018**

**Summary of Observed Erroneous and Misleading Respondent's Position Statements**

Section II – Overview

1. Respondent's Statements about my <u>transfer</u> to the QI Department are **inaccurate**, erroneous, and/or far from the truth. I <u>did not</u> request a transfer to the QI department. (see EEOC resolution in 2011) I dropped charges because my request was granted and was given permission to move out of QI.

- ***July 2017:*** *I was approached by Michael Strobel and Dietrick Williams in July 2017 with an offer to transfer to the Quality Improvement Department where I will have access to advancement opportunities and more people to do STARs & QRS work. When I hesitated, I was given the impression during said meeting (by Dietrick Williams – current boss) that advancement to director position was "around the corner". I was told to be patient because the promotion was pending in approximately one and a half months (that placed the timeline in September 2017). I was then told by Michael Strobel, who was present, to report for duty on August 1, 2017 to continue & bring STARs/QRS strategies (which according to corporate should be under QI vs Operations) to his QI staff. MS also stated that I was to continue to report to both him and Dietrick. Dietrick added that he was not qualified to oversee my STARs/QRS work in Operations and that my work was quality work. On next day, I approached HR regarding concerns I had about this transfer and asked to see the COO (who had promised movement to director position). The COO was not available at that time – however – HR stated that this move will put me in the setting to get what I have been asking for – director. When I expressed that I would rather not move, HR advised that although I <u>did not have a choice</u>, I should take this opportunity because a promotion was pending (I had been awaiting a director level opportunity for years). On that same day in July, I referred back to my current boss - Dietrick Williams - who essentially repeated HR's statements; however, communicated that I can go back to him if the need arrived.*

2. Respondent's Statement about Michael Strobel's age in 2017 is <u>not true</u>.

- ***August 1, 2017:*** *Michael Strobel was 49 years old (**not 50**) as stated*

3. Respondent's Statements about helping me to develop people management skills and assist me in obtaining a higher-level role (director) is blatantly not true.

- On **8/31/2017**, the day after one of the quality directors suddenly quit the job, I offered my services to take her place, as this was a real business need. I viewed this as a win-win- win because restructuring was occurring and I was more than qualified to do the work. I shared with M.S. that I am the <u>only certified professional in healthcare quality</u> (CPHQ) here @ PSHP – a **requirement to work in QI** - with many years of experience. I was more qualified than the vacating director or any other in the department to lead. He said that (his words) he "can/could not do that". M. S. then followed with: "Besides, I would not move you to a director position this year anyway because I am not budgeted for it until early next year (2018)"

- In **December, 2017** M.S and Shay Hawkins told me to take Angela Farris under my supervision because (under Shay's supervision) she (Angela) was difficult and not catching on to quality. Shay Hawkins further stated that if quality concepts could be taught to Angela, her recommendation was to put her with me as a last resort (the

1

purpose was not to develop people management skills) I was then ordered to begin the
system transition in Workday immediately to take on Angela. Around that time, and
during an impromptu hallway discussion about what my needs may be when Medicare
and Marketplace membership increased, M.S asked me what I would need specifically. I
told him that I would need 2 PMs – one for Medicare and one for Marketplace. I
expressed that I did not mine training Angela Farris (the rejected QI Specialist) in the
meantime, and I provided him with the following title/job description examples for me –
as he asked for solutions: Q/RA Director, Continuous Improvement Director, & STARs &
QRS Director. M.S. took the job descriptions and showed appreciation for them.

- AT NO TIME, did MS offer assistance to move me to a higher-level role (director).
  **When would he have done this?** Investigation will show that Nine (9) months from
  the date of transfer to MS would pass without one scheduled one-on-one (1:1) official
  meeting with him. I only got to talk with him at the printer or in hallway, or to address
  a request or put out a fire via mostly standing at his desk
- **I left the idea of promotion alone until Monday (2/19). I approached M.S. again
  in the hallway.** M/S. discussed that **he did not yet know** what he wanted to do with
  the existing current open director quality position (not yet posted as he stated.). It
  had been sitting in wait since August. When I mentioned that I am still waiting to be
  moved to director level and that I could easily be moved into this existing quality
  position, M**.S. again loudly communicated that he did not know yet what he
  wanted** to do with that position; but, he expressed that he had proposed a position
  for me and that it was at corporate awaiting approval. When I asked - what was the
  name of the position (only in an attempt to do proactive planning) M.S. stated that he
  did not want to tell me that information. AT NO TIME, did M.S, offer or mention Sr.
  Manager role. It did/would not occur to me that M.S. would propose a position other
  than director for me and promote unqualified people (Al Miller and Shay Hawkins) to
  director role and higher. My job involved managing & supervising activities of people
  who did not report to me directly (all employees at the health plan).  Centene does
  not have a policy that requires a manager or director to have (DR) direct reports
  (direct people management) before movement to director. If Centene had such a
  requirement, investigation will reveal gross inconsistency in following the policy that
  impacted the following people who had no direct reports for years:
    - Tara Freeney – Director, Operations (years without DRs)
    - Larry Santiago – SR Director Provider Network – working in QI – (years without
      DRs)
    - Sonya Cuffie - (years without DRs)
    - Dietrick Williams – Sr Director Operations (nearly 2 years without DRs – I was his
      1st in 2011)
    - Jennie Siems – a manager promoted to director last year (had no direct reports)

Very recently, some of the directors above, now have only 1 or 2 direct reports.
However, Centene is equipped and does have policy guidelines related to meeting
qualifications to move to a director level – and neither Al Miller nor Shay Hawkins met
qualifications; while I exceeded qualifications all around.

4. Respondent's Statement in last <u>paragraph under section II are blatantly untrue</u> about my purpose and behavior when I approached his office regarding miscommunications. (See e-mails in my attempt to resolve and mis-understandings).

- My purpose for seeing him was to clarify all mis-communications and wrongful accusations – I knocked and opened the door at the same time. I saw Shay was in the office and asked her to stay to help me clarify some miscommunications and she agreed to stay. **At no time** did I point my fingers or used a loud tone. **At no time** did MS invite me in. When I asked him to let me explain why I was asking to go to the summit a 2nd time --- he would not listen **and instead, he yelled at me** and criticized my tone while turning red in the face. The reason I wanted Shay to stay is because it was Shay who had changed her mind and wanted to remove her name from attending to summit. My request was simply to go in her place. This meeting **did not exceed 10 minutes**......he was too angry. I sat for a moment in an attempt to help him bring down is tone and anger while I said to him: '**I am here to help you'. This seemed to make him angrier**. So, I walked away with no understanding.
- I truly don't understand why he was so angry. It would be 6 days later when I was alerted to a **verbal warning.**
- I was subjected to offensive, unwelcomed conduct that was so intense that it affected my level of thinking, comfort and peace in my work for the rest of the day and during the entire weekend.
- **By Monday 2/26/2018,** I would like to have followed up to nip the confusion in the bud; however, I am now fearful of being alone with him.  With his face turning red and getting yelled at about my tone of voice on Friday while pointing at me was frightening and made me suspicious of a setup.

## Section III – On Age Discrimination

5. Respondent's Statements about lack of references to my age is not true,

Several age-related references were made several times.

- On 2/28/2018, I expressed to Michael Strobel and Dr. Dean Greeson in a meeting that I was nearing retirement preparation and my goal is to work my final years as a director. I asked for their help with this, I left the meeting believing that we had cleared some of the miscommunication and that the meeting dispelled any reasons to mistrust each other. Dr. Greeson closed this meeting with my recommendation and stated '*what*' he thought was needed. He told M.S. that he needs to begin scheduling 1:1 meetings with me and looked at me & MS and told me to let M.S. help me to get the position that I want. (meeting can be verified in outlook)
- During 1st week in March, 2018 I met with Clyde White – new COO and expressed that I needed help to transfer out of the QI department because it appeared that all opportunities were being blocked by MS. I expressed that even though **my age may be** a factor, I am/was not ready to quit working and that I had so much yet to offer the company. I did not mention the verbal warning or any specific negative occurrences about MS in an attempt to preserve plan-wide cross-functional relationships if moved back to Operations. I asked for his support to move me back to Operations as director during my final years. His response: "Give me a couple of months to see what I can do"

3

- On May 21 my position was eliminated without an offer for another and without warning. .All of my documents and lap top were taken away immediately (including all of my documents sent to EEOC)  What are my chances of getting another job at age 69? This happened with their knowledge that my chances were slim to none.
- At about the same time, I also spoke with Debra Peterson-Smith, new CPO, who also said to give her a couple of months. When she asked me why I was not advancing in QI, I only told her that I thought MS had a problem with people who know more than he (I had noticed that he was quick to dismiss RNs). I told her that I would express more at another time.
- In recent months when I talked with local HR about the mounting problems – I was asked: "**Why are you still here?" "Why are you staying in this environment when you can be retired and at home relaxing**?" I had expressed to HR in 2015 that my goal was to work my final years as a director. I reminded her of this.
- **On April 25,** MS met with me and Shay Hawkins to discuss expanding the scope of my role. The role included:
  - 2 Products which populations have tripled in the last year
  - Oversight of QIP, CCIP, MOC and HOS
    - When I asked for comparable upgrade to director to support fulfilling this expanded role, MS responded: "*Oh Linda, we all know you want to be a director!*
  - MS appeared to be a hostile talent diminisher which leads to wasting talents and skills of qualified people, while playing favoritism for less qualified employees:
  - Shay Hawkins 42 y/o Practical nurse who has lost her license, no Professional BS degree and no QI certifications– does not meet QI qualifications to be a director
  - Al miller 59 y/o with no QI certifications or practice does not meet QI qualifications to be director
  - MS turned 50 in May 2018, has no QI certifications to be VP of Quality

*I don't know exactly why MS has taken the above steps to block and express anger whenever I appropriately requested to advance to director. **Is there influence due to my age, accomplishments, or to past EEOC complaints that I have filed?** MS is good friends with people named in past EEOC charges – which is the main reason that I did not want to transfer back to QI dept.

## Section IV – Retaliation

6. Respondent refused to remove the verbal warning even after he admitted that he did not know its duration. M.S expressed in a follow up meeting @ end of March that he thought the VW was over. (This supports the fact that he only wanted to use it to block app processes at the time). This can be confirmed by HR Director.
- Tension began to mount up after 2/19/2018. Michael became hostile and very angry and used his authority to **punish me for complaining to HR about promotional inconsistencies.** It seemed like anything and every word from me angered and enraged him – even my request to go to a Quality Summit.
- Imagine how shocked I was on **Tuesday (2/20)** when I was met with confusion and frustration due to apparent lack of transparency and because coupled with the above statements, this said director quality position (that M.S & I had just talked about on the

4

day before) was posted on our job site. MS absolutely did not tell the truth about the opportunity that now & then existed for me.

- On 2/21/2018 I asked M.S about the inconsistency and discrepancy
- Also, I was shocked on 2/21/2018 to suddenly be at the end of angry and yelling rage because I made a 2nd attempt to go to the Risk/Quality Summit – and the 2nd attempt was only because I was told that one of the employees was dropping out/not going to the summit.  And I was advised by another VP to go in the vacated space
- It did/would not occur to me that M.S would write an unwarranted verbal warning because I talked with local HR regarding inconsistency & unfairness for promotion and that he told me that he was not doing anything about positions anytime soon and yet there were postings the next day
- It did/would not occur to me that M.S would write an unwarranted verbal warning just in time to block my advancement in the application for director process. (see formal corporate HR complaint- already sent to EEOC)
- Nine (9) months from the date of transfer to MS would pass **without** one scheduled one-on-one (1:1) official meeting with him. I only got to talk with him at the printer or hallway

See related e-mails already sent to EEOC



FW  Update - Last
Day.msg



Stress Reduction &
OFI.msg

See Additional attached e-mails



Im from
Michael.msg



RE  Business
Review Template 02(



RE  Update - Last
Day.msg

**Section V –Conclusion**
- When I complained to Human Resources about harassment and hostile behavior by MS, I suffered retaliation from Michael Strobel. The misuse of authority and power became more intense, as if he had permission to inflict pain and misery upon me and as if he wanted to discourage me from continued employment,  even though I shared I was not ready to retire.
- MS did harass and retaliate against me. I am still suffering from the impact of the elimination of my position without cause, warning or support for another position – knowing that at age 69, it will be hard to get another job. MS did inflict age discrimination.
- The elimination occurred on the same day he asked me to write & submit a business plan for Medicare and Marketplace products for him to present (I was present) to the CEO and corporate 2 hours before a scheduled meeting titled: Follow up-meeting in HR in the subject line. He walked in and said your position is eliminated – now.
- Going on 12 years of employment, please see that I have met or exceeded in performance evaluations over time. I wanted to continue to work and use my talent and skills for the good of the company, as I have expressed that I was not ready to retire.

Thank you for your help,
Linda B. Philpot

5

15.  Plaintiff    _____    still works for defendant(s)

                   ___✓___    no longer works for defendant(s) or was not hired

16.  If this is a disability-related claim, did defendant(s) deny a request for
     reasonable accommodation?    _____ Yes    ___✓___ No

          If you checked "Yes," please explain: _____

          _____

          _____

          _____

          _____

17.  If your case goes to trial, it will be heard by a judge <u>unless</u> you elect a jury
     trial.  Do you request a jury trial?    __?__ Yes    _____ No

                              Whichever is convenient for
                                             the courts

                              **Request for Relief**

As relief from the allegations of discrimination and/or retaliation stated above,
plaintiff prays that the Court grant the following relief (check any that apply):

     _____    Defendant(s) be directed to _____

                _____

     ___✓___    Money damages (list amounts) At least 2 years backpay

     ($200,000.00)   as well as, Separation pay of $44,823.54 as
                     was stated on day of separation (not yet
     ___✓___    Costs and fees involved in litigating this case    received)

     ___✓___    Such other relief as my be appropriate

## PLEASE READ BEFORE SIGNING THIS COMPLAINT

Before you sign this Complaint and file it with the Clerk, please review Rule 11 of the Federal Rules of Civil Procedure for a full description of your obligation of good faith in filing this Complaint and any motion or pleading in this Court, as well as the sanctions that may be imposed by the Court when a litigant (whether plaintiff or defendant) violates the provisions of Rule 11. These sanctions may include an order directing you to pay part or all of the reasonable attorney's fees and other expenses incurred by the defendant(s). Finally, if the defendant(s) is the prevailing party in this lawsuit, costs (other than attorney's fees) may be imposed upon you under Federal Rule of Civil Procedure 54(d)(1).

Signed, this _23_ day of _April_, 20 _20_

_Linda B. Philpot_
(Signature of plaintiff *pro se*)

_Linda B. Philpot_
(Printed name of plaintiff *pro se*)

_339 Timeless Walk_
(street address)

_Stockbridge, GA. 30281_
(City, State, and zip code)

_ppot@bellsouth.net_
(email address)

_770-851-3029_
(telephone number)

Page 9 of 9